## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**BRYAN KEITH GRIFFIN**              **CIVIL DOCKET NO. 6:21-CV-00082**

**VERSUS**                          **JUDGE DAVID C. JOSEPH**

**SPECIALIZED ENVIRONMENTAL**        **MAGISTRATE JUDGE DAVID J.**
**RESOURCES, INC.**                  **AYO**

### MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") [Doc. 42]
filed by Defendant, Specialized Environmental Services, Inc., A/K/A Specialized
Environmental Resource, LLC, A/K/A Restoration Environmental Specialist, LLC
(collectively "SER"). Plaintiff, Bryan Griffin ("Plaintiff") opposed the Motion. [Doc.
45]. SER filed a REPLY [Doc. 46], to which Plaintiff responded [Doc. 48]. Because
Plaintiff has failed to establish the subject matter jurisdiction of this Court, SER's
Motion is DENIED, and the above-captioned matter is DISMISSED without
prejudice.

### BACKGROUND

On May 9, 2019, SER hired Plaintiff as a seismic driller's helper. [Doc. 42-7,
pp. 14, 16]. During his first week of employment, Plaintiff watched safety videos,
worked at SER's shop, cleaned the yard, loaded trucks, and worked on equipment.
[Doc. 42-7, pp. 6-8]. Plaintiff was subsequently assigned to a field project in Port
Neches, Texas, where his job consisted of inserting pipes in the soil and taking
samples. [Doc. 42-7, pp. 7-9, 14]. He performed this work exclusively on SER's Marsh
Buggy #1 (the "marsh buggy"). *Id.* The marsh buggy is a custom-made "amphibious

tracked vehicle" designed to operate on land, swampland, or marshland flooded with up to two feet of water.   [Doc. 42-4, pp. 1-2].   The marsh buggy's sole means of propulsion are its two "tracks," and it does not have an outboard engine or any other means of water propulsion.  [Doc. 42-7, p. 21].

While on the project, Plaintiff spent approximately forty minutes each morning getting to the marsh buggy.  [Doc. 42-2, p. 9].  At 6:00 a.m., Plaintiff arrived at a boat landing on the Neches River to board a support boat with two outboard engines.  [Doc. 42-2, pp. 9, 11].  This boat would take him to a smaller body of water, where he would transfer to an air boat to drive him to the marsh buggy.  *Id.*  The marsh buggy operated in "swampland" like terrain where the marsh buggy would, at times, kick up mud as it moved.  [Doc. 42-2, p. 9].  There were no tugboats nearby to assist the buggy move through the terrain, nor were there any other vessels, boats, or vehicles in the surrounding area.[1]  *Id.*

On June 9, 2019, while Plaintiff was working on a pipe in the marsh buggy, the driller accidently hit a lever that caused the pipe to move unexpectedly and injure Plaintiff's right hand.  [Doc. 2, p. 3].  Following his injury, Plaintiff brought a claim against SER for benefits under the Longshore Harbor Workers Compensation Act ("LHWCA").  [Doc. 42-2, p. 7]; s*ee* [Doc. 42-5].  From June 15, 2019, to January 28,

---

[1]     Plaintiff stated in his deposition that he could see boats in the distance in the channel where the support boat navigated.  [Doc. 42-2, p. 9].

2021, Plaintiff received approximately $43,000 in indemnity disability payments and approximately $42,000 for medical care.[2]  *Id.*

On January 13, 2021, Plaintiff filed suit in this Court asserting claims of negligence and unseaworthiness against SER under both the Jones Act and general maritime law.  [Doc. 2, p. 3].  SER filed the pending Motion on December 8, 2022, asserting that Plaintiff's claims are not cognizable because of his prior LHWCA settlement and because he does not qualify as a "seaman" under the Jones Act.  [Doc. 42-2, p. 6].  In this respect, SER contends that Plaintiff cannot establish: (i) that the marsh buggy was a vessel; (ii) that the marsh buggy operated on navigable waters; nor (iii) that he had a sufficient connection to any specific vessel.  *Id.*  In response, Plaintiff urges that summary judgment is improper because "no decision has been made by the court concerning seaman's status in this matter and summary judgment is inappropriate to decide this important issue."  [Doc. 45, p. 10].

<u>LAW AND ANALYSIS</u>

## I.  <u>Subject Matter Jurisdiction</u>

Subject matter jurisdiction is a threshold issue and one to which federal courts must remain attentive throughout the course of any litigation.  *See generally*, *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).  Although not raised by the parties, given the posture of this case and the facts presented, the Court deems it necessary to determine subject matter jurisdiction before considering the merits of the Motion.

---

[2]     Plaintiff's LHWCA claim against SER settled on June 12, 2021.  [Doc. 42-2, p. 7]; [Doc. 42-6].

It is fundamental that "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  As such, Courts should presume "that a cause lies outside [its] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (internal citations omitted).  Unlike other issues such as personal jurisdiction, subject-matter jurisdiction "can never be waived or forfeited."  *Gonzalez* 565 U.S. at 141.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).  The Court looks to the facts alleged by the Plaintiff to determine its jurisdiction over this matter.

## II.   Jones Act

"The Jones Act creates a cause of action for the seaman who is injured in the course of his employment by his employer's negligence." *Powell v. Offshore Nav. Inc*, 644 F.2d 1063, 1068 (5th Cir. 1981).  Because the Jones Act establishes a federal statutory basis for recovery, the Court's jurisdiction over claims brought pursuant to the Jones Act is founded on general federal question jurisdiction.  *Id.* at 1067; 28 U.S.C. § 1331.  Plaintiff's entitlement to recovery under the Jones Act – and thus this Court's jurisdiction – therefore hinges on whether Plaintiff qualifies as a "seaman." The Supreme Court has established a two-prong test to determine seaman status: (i) "the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission;" and (ii) "a seaman must have a connection to a vessel in navigation … that is substantial in terms of both duration and nature." *Chandris, Inc., v. Latsis*, 515 U.S. 347, 368 (1995).  "An injured person claiming the benefits of

the Jones Act … has the burden of establishing seaman status." *Barrett v. Chevron, U.S.A., Inc.*, 752 F. 2d 129, 132 (5th Cir. 1985).

Here, Plaintiff asserts that his employment on the marsh buggy qualifies him as a Jones Act seaman.  [Doc. 2, p. 3].  SER disputes this assertion and contends in its Motion that Plaintiff is not entitled to relief under the Jones Act because he cannot establish that the marsh buggy is a vessel.  [Doc. 42-2, pp. 17-18].

It is well established that "[t]he existence of a vessel is a fundamental prerequisite to a Jones Act claim and is central to the test of seaman status." *Burchett v. Cargill, Inc.*, 48 F. 3d 173, 176 (5th Cir. 1995) (citing *Daniel v. Ergon, Inc.*, 892 F. 2d 403 (5th Cir. 1990); *Blanchard v. Engine & Gas Compressor Servs., Inc.*, 575 F. 2d 1140, 1141 (5th Cir. 1978)).  Generally, a Jones Act vessel "includes every description of water-craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 489 (2005) (internal citations omitted).  However, "[t]he question remains in all cases whether the watercraft's use 'as a means of transportation' is a practical possibility or merely a theoretical one." *Id.* at 496.

In *Lozman v. City of Riviera Beach, Fla.*, the Supreme Court narrowed this inquiry to whether "a reasonable observer, looking at [the watercraft's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Id.* 568 U.S. 115, 121 (2013).  The Court further noted that "[a]lthough a lack of self-propulsion is not dispositive … it may be a

relevant physical characteristic" when determining whether a watercraft is a vessel. *Id.* at 122.

In *Lozman*, the Supreme Court held that the subject "houseboat" did not qualify as a vessel in part because: (i) it did not have a rudder or steering mechanism; (ii) it did not have a raked hull; (iii) it "had no special capacity to generate or store electricity;" (iv) it had no means of self-propulsion; and (v) it was only capable of traveling over water by being towed. *Id.* The Court concluded that "[b]ut for the fact it floats, nothing about [the] home suggests that it was designed to any practical degree to transport persons or things over water." *Id.* at 121. Conversely, in *Stewart*, the Supreme Court held that a dredging "*Super Scoop*" was a vessel because it had "certain characteristics common to seagoing vessels, such as a captain and crew, navigational lights, ballast tanks, and a crew dining area." 543 U.S. 481, 484 (2005). Additionally, the Court noted that it had "limited means of self-propulsion" and typically moved thirty-to-fifty feet every couple of hours while dredging in the Boston Harbor. *Id.* at 484-85.

Here, the marsh buggy is much more analogous to the houseboat in *Lozman* than the *Super Scoop* in *Stewart*. First, the marsh buggy was designed to operate in "land, swampland, or marshland" – not water. [Doc. 42-4, p. 2]. Second, like the houseboat, the marsh buggy has no ranked bow, or bow of any kind, and relies solely on its tracks to move through the swampland. *Id.* Although the marsh buggy can float over water, it navigates on water with "extremely limited mobility." *Id.* When the marsh buggy is floating on water, it has *no* means of self-propulsion and must be

steered by a support vessel.  *Id.*  Moreover, the marsh buggy had to be "towed over water to its working location … [because it] could not effectively navigate across the Neches River canal on its own power."  *Id.*

All told, the weight of the evidence suggests that the marsh buggy is not a vessel because a reasonable observer could not determine that it is designed to a *practical* degree to carry people or things over water.  Because the marsh buggy does not qualify as a "vessel," it follows that Plaintiff is not a Jones Act seaman and, accordingly, that this Court does not maintain federal question jurisdiction over Plaintiff's claims under the Jones Act.

## III.   Admiralty Jurisdiction over Maritime Torts

The jurisdiction of federal courts to hear cases in admiralty originates in the text of the United States Constitution.  *See* U.S. Const., Art. III, § 2, cl. 1; 28 U.S.C. § 1333.  To properly invoke the court's maritime jurisdiction, the plaintiff must establish both a maritime locality and a significant relationship to a traditional maritime activity.  *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531-34 (1995) (*citing Executive Jet Aviation, Inc. v. City of Cleveland, Ohio*, 409 U.S. 249, 253 (1972); *Foremost Insurance Co. v. Richardson*, 457 U.S. 688, 673 (1982); *Sisson v. Ruby*, 497 U.S. 358, 367 (1990)).  Under the two-part *Grubart* test, admiralty jurisdiction can be exercised over a tort where both the location test and the connection test are satisfied.  *Id.*  The "location" test requires, in general terms, that a tort occur on navigable water or that an injury suffered on land was caused by a vessel on navigable water.  *Id.*  The "connection" test requires that: (i) the

"general features of the type of incident involved" have "a potentially disruptive impact on maritime commerce," and (ii) the "general character of the activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." *Id.*

*Location Test*

To determine the existence of admiralty jurisdiction, the Court must first decide whether the areas in which the marsh buggy operated (and the Plaintiff sustained injury) satisfy the location test.  Here, Plaintiff alleges that while he was working on a pipe from the marsh buggy, the driller accidentally hit a lever causing the pipe to go down and injure his hand.  [Doc. 2, pp. 2-3].

According to Plaintiff's own account, the marsh buggy operated on "soft swamp land" that consisted of a few feet of water and mud.  [Doc. 42-7, pp. 14, 22-23].  At times the terrain was so muddy that the marsh buggy required the use of a mounted boom and bucket to dig itself free from the mud.  [Doc. 42-2, p. 23]; [Doc. 42-7, p. 20]. Plaintiff further stated that there were no other vessels, boats, or vehicles operating in the marsh buggy's vicinity.  *Id.*  Plaintiff testified that he had to take a support boat *and* an airboat to reach the marsh buggy.[3]  [Doc. 42-2, p. 23]; [Doc. 42-7, p. 13]. Plaintiff's job consisted of inserting and removing pipes from the same "soft swamp

---

[3]      In *In re Destiny Drilling*, the Fifth Circuit held both that shallow marsh did not qualify as a navigable water and that "[a]n airboat is constructed as a means of transportation across non-navigable waters."  184 F.3d 816 (5th Cir. 1999).

land" on which the marsh buggy operated.  [Doc. 41-7, p.14].  Pictures of the area and

terrain traversed by the marsh buggy are included below:[4]





---

[4]      The pictures were provided by SER's office manager Summer Bagwell.  [Doc. 42-3]; [Doc. 42-1, p. 3].

The Fifth Circuit has consistently held that swampland or marsh land does not constitute navigable water.  *See Smith v. Pan Air Corp.*, 684 F.2d 1102, 1108 (5th Cir. 1982) (finding maritime jurisdiction improper because inland marsh did not constitute navigable water); *In re Destiny Drilling (USA) Inc.*, 184 F.3d 816, 816 (5th Cir. 1999) (holding "shallow and vegetation-choked" marsh in St. Mary Parish was a non-navigable waterway); *Dardar v. LaFourche Realty Co.*, 55 F.3d 1082, 1085 (5th Cir. 1995) (noting that clogged, discontinuous, and shallow bayou that terminated in marsh was non-navigable water).

As is evident from the photographs, the area in which the marsh buggy operated appears to be marshland, not a navigable waterway.  Furthermore, the record contains undisputed evidence that the marsh buggy: (i) was designed to operate on land, swampland, or marshland with "up to two feet of water;" (ii) had no means of self-propulsion while floating; and (iii) could only float over water with "extremely limited mobility."  [Doc. 42-4, pp. 1-2].  This is sufficient for the Court to determine that the subject accident occurred on a marsh buggy operating in non-navigable swampland.  Because neither the alleged tort nor Plaintiff's resulting injury occurred on navigable water, Plaintiff's allegations do not meet the location test necessary to support admiralty jurisdiction.[5]

## IV.   <u>Diversity Jurisdiction</u>

Although not pled or otherwise invoked by the Plaintiff, the Court next looks to the parties' allegations to determine whether it has diversity jurisdiction over the

---

[5]    Because Plaintiff has failed to satisfy the location test, the Court need not determine whether the "connection" test is met.

claims asserted.  Under 28 U.S.C. § 1332, "district courts … have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 … and is between citizens of different states."  "To properly allege diversity jurisdiction under 28 U.S.C. § 1332, a party must allege 'complete diversity,' which means that 'all persons on one side of the controversy [must] be citizens of different states than all persons on the other side.'"  *Smith v. Toyota Motor Corp.*, 978 F. 3d 280, 281 (5th Cir. 2020) (quoting *McLaughlin v. Miss. Power Co.*, 376 F. ed 344, 353 (5th Cir. 2004).  To adequately allege diversity jurisdiction of a corporation, the party asserting jurisdiction must "set out the principal place of business of the corporation as well as the state of its incorporation."  *Id.* (*quoting Neeley v. Bankers Tr. Co. of Tex.*, 757 F. 2d 621, 634 n.18 (5th Cir. 1985).  "The burden of proving that complete diversity exists rests upon the party who seeks to involve the court's diversity jurisdiction."  *Stafford v. Mobil Oil Corp.*, 945 F. 2d 803, 804 (5th Cir. 1991) (quoting *Getty Oil Corp., a Div. of Texaco v. Ins. Co. of N. Am.*, 842 F. 2d 1254, 1259 (5th Cir. 1988)).

Here, Plaintiff does not specifically, or sufficiently, allege diversity jurisdiction. In the Complaint, Plaintiff merely states that SER "is a foreign corporation authorized to do and doing business in the State of Louisiana." [Doc. 2, p. 1].  Plaintiff does not allege SER's principal place of business nor its state of incorporation.  *See* [Doc. 2].  Nor does Plaintiff allege the monetary value of his claims.  [Doc. 2, p. 5].  In failing to allege SER's principal place of business, its state of incorporation, and the amount in controversy, Plaintiff has failed to meet his burden of establishing

diversity jurisdiction.  The Fifth Circuit has repeatedly held that a "[f]ailure [to] adequately … allege the basis for diversity jurisdiction mandates dismissal." *Smith*, 978 F. 3d at 282 (citing *Howery*, 243 F. 3d at 919) (quoting *Stafford*, 945 F. 2d at 805).

### CONCLUSION

Because the Plaintiff has failed to establish a basis for this Court's jurisdiction under either the Jones Act, admiralty jurisdiction, or in diversity, the Court is without jurisdiction to decide the merits of the Motion or the subject claims.

IT IS THEREFORE ORDERED that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 42] is DENIED.

IT IS FURTHER ORDERED that this matter is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

THUS, DONE AND SIGNED in Chambers on this 9th day of February 2023.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE